IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| TRUSTEES OF THE NATIONAL AUTOMATIC SPRINKLER INDUSTRY WELFARE FUND, et al. | : |  |
|  | : |  |
|  | : |  |
| v. | : | Civil Action No. DKC 10-3573 |
|  | : |  |
| SECURITY FIRE PROTECTION, INC., et al. | : |  |

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this action arising under the Employee Retirement Income Security Act of 1974 ("ERISA") are Plaintiffs' motions for default judgment (ECF No. 10) and for summary judgment (ECF No. 11). The clerk of the court notified Defendants of the pendency of the motion for summary judgment and the necessity for filing a response. *See Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam). Despite the grant of an extension of time to file, no response was received. The relevant issues have been briefed, and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Plaintiffs' motion for default judgment will be granted in part and denied in part, and Plaintiffs' motion for summary judgment will be granted.

## I.   Background

Plaintiffs are trustees of various trust funds associated with Sprinkler Fitters Local Union No. 669 ("the Funds"). The Funds are employee benefit plans within the meaning of section 3(3) of ERISA. *See* 29 U.S.C. § 1002(3). Defendant Security Fire Protection, Inc. ("Security Fire") is an employer engaged in an industry affecting commerce under ERISA. *See* 29 U.S.C. §§ 1002(5), (12). The Funds were established and are maintained pursuant to the Restated Agreements and Declarations of Trust ("the trust agreements") and a collective bargaining agreement between Sprinkler Fitters Local Union No. 669 and Security Fire.[1]

Per the trust agreements and the collective bargaining agreement, Security Fire was required to make timely contributions to the Funds for "each hour of work by employees performing installation of automatic sprinkler systems" (ECF No. 1 ¶ 6) and to submit forms every month reporting the amount of contributions due. From 2007 to 2010, however, Security Fire "experienced substantial difficulty" in making the required contributions to the Funds. (*Id.* ¶ 8). As a result, Security Fire and the Funds entered into a Settlement Agreement and Promissory Note ("the settlement documents") whereby Security Fire would systematically pay a principal amount of $35,734.42

---

[1] The Funds are administered in Landover, Maryland.

owed to the Funds over a period of eighteen months, plus interest. (*Id.*). The settlement documents also affirmed Security Fire's obligation to remain current with future contributions and monthly reports as required by the trust agreements and the collective bargaining agreement. Liquidated damages were waived so long as Security Fire stayed current with the scheduled payments under the settlement documents as well as the regular monthly contributions for the duration of the settlement. Defendant Kevin Briceno, who is the President of Security Fire, and Defendant June Briceno[2] executed the settlement documents and personally guaranteed the amounts owed by Security Fire to the Funds "inclusive of future monthly contributions owed to the Funds which become due during the life of the settlement documents." (*Id.* ¶ 9).

On December 22, 2010, Plaintiffs filed a complaint on behalf of the Funds alleging that Security Fire defaulted on the settlement documents by failing to remain current with its monthly settlement payments and by failing to pay the contributions owed from March 2010 through November 2010. According to the terms of the settlement documents, Security Fire owes $88,150.95 "for contributions and reinstated liquidated damages currently owed." (*Id.* ¶ 10).

---

[2] The record does not specify June Briceno's relationship to Kevin Briceno.

The complaint also alleges that Security Fire breached the trust agreements and the collective bargaining agreements by failing to make contributions and/or submit contribution reports for certain months. The trust agreements provide that if Security Fire fails to submit contribution reports, the Funds are permitted to project "the greater of the average for the monthly payments actually made by the Employer for the last three (3) months for which payments were made, or the average of the monthly payments made by the Employer for the last twelve (12) months for which payments were made." (*Id.* ¶ 14). The agreements further provide that if an employer fails to make timely contributions, it must pay liquidated damages according to a specified formula: If payment is not received by the fifteenth day of the month in which it is due, the employer must pay liquidated damages of ten percent of the contribution amount; if the payment is not received by the last working day of the month, the employer must pay an additional five percent; and if payment is not received by the fifteenth day of the following month, another five percent is owed as liquidated damages. (*Id.* ¶ 18).

Plaintiffs allege that Security Fire made late payments for the months of September 2009 through February 2010; that it made only partial payments for the months of March 2010 through June 2010; and that it failed to make any payments for the months of

July 2010 through November 2010. (*Id.* ¶¶ 12, 13, 16, 17). In addition to the outstanding contributions of $81,469.83, Plaintiffs seek liquidated damages of $28,852.73, interest for late payments, attorneys' fees, and costs. Moreover, Plaintiffs assert that pursuant to the settlement documents, Kevin Briceno and June Briceno are jointly and severally liable for all amounts owed by Security Fire to the Funds, including the settlement monies, unpaid contributions, liquidated damages, interest, costs, and attorneys' fees. (*Id.* ¶ 20).

Plaintiffs served the summons and complaint on February 15, 2011. On March 7, 2011, the Bricenos, without counsel, filed an answer to the complaint. (ECF No. 4). Because neither of the Bricenos is a lawyer, however, the court accepted their answer only on their behalf individually and not on behalf of Security Fire. (ECF No. 5). The court warned Defendants that Security Fire "may be subject to the entry of default on claims against it." (*Id.*). When Security Fire failed to respond within the requisite time period, Plaintiffs moved for entry of default and default judgment. (ECF Nos. 9, 10). Plaintiffs seek a default judgment against Security Fire for breach of the settlement documents in the amount of $88,150.95, unpaid contributions of $103,611.41, liquidated damages of $34,664.60, interest of $9,734.68, attorneys' fees of $706.25, and costs of $525.00.

(ECF No. 10).   The clerk entered default against Security Fire on May 23, 2011.  (ECF No. 12).

Plaintiffs also moved for summary judgment against the Bricenos for the same amount of damages as in their motion for default judgment.  (ECF No. 11).   The Bricenos' response was originally due on May 23, 2011.  Having received no response to Plaintiffs' summary judgment motion, on June 2, 2011, the court sent another letter to the Bricenos warning them:  "If you do not file a timely written response, the Court may dismiss the case or enter judgment against you without further notice." (ECF No. 13).   On June 17, 2011, the Bricenos requested an extension of time, which request was granted.   The new deadline for their response to the motion for summary judgment was set for July 20, 2011.   That date has now passed.   Having heard no further from the Bricenos since their June correspondence, the court has no choice but to consider Plaintiffs' motion for summary judgment unopposed.

## II.  Motion for Default Judgment as to Security Fire

### A.   Standard of Review

Pursuant to Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."   Where a default has been previously entered by the

clerk and the complaint does not specify a certain amount of damages, the court may enter a default judgment, upon the plaintiff's application and notice to the defaulting party, pursuant to Rule 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002). The United States Court of Appeals for the Fourth Circuit has a "strong policy" that "cases be decided on their merits," *id.* (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate when the adversary process has been halted because of an essentially unresponsive party, *see SEC v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)).

Upon entry of default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not. *Lawbaugh*, 359 F.Supp.2d at 422. Rule 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Thus, where a complaint specifies the amount of damages sought, the plaintiff is limited to entry of a default judgment in that amount. "[C]ourts have generally held that a default judgment

cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount." *Meindl v. Genesys Pac. Techs., Inc. (In re Genesys Data Techs., Inc.)*, 204 F.3d 124, 132 (4th Cir. 2000). Where a complaint does not specify an amount, "the court is required to make an independent determination of the sum to be awarded." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (citing *SEC v. Mgmt. Dynamics, Inc.*, 515 F.2d 801, 814 (2d Cir. 1975); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981)). While the court may hold a hearing to prove damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum." *Adkins*, 180 F.Supp.2d at 17 (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)); *see also Laborers' Dist. Council Pension v. E.G.S., Inc.*, No. WDQ-09-3174, 2010 WL 1568595, at *3 (D.Md. Apr. 16, 2010) ("[O]n default judgment, the Court may only award damages without a hearing if the record supports the damages requested.").

### B.  Analysis

In their motion for default judgment, Plaintiffs seek a total award of $226,426.97, which consists of:  (1) settlement monies owed totaling $88,150.95; (2) unpaid contributions of $103,611.41; (2) liquidated damages of $34,664.60; (3) interest of $9,734.68; (4) attorneys' fees of $706.25; and (5) costs of

$525.00.   In  support  of  these  amounts,  they  submit  the
declaration  of  John  P.  Eger,  Assistant  Administrator  of  the
Funds  (ECF  No.  10-5);  a  spreadsheet  ("Exhibit  A")  specifying
unpaid  contributions,  liquidated  damages,  and  interest
pertaining  to  each  of  the  relevant  months  (ECF  No.  10-4);  and
the  declaration  of  their  attorney,  Charles  W.  Gilligan,  in
support  of  their  claim  for  attorneys'  fees  and  costs  (ECF  No.
10-2).

### 1.    Settlement Monies

Plaintiffs  seek  $88,150.95  for  contributions  and  reinstated
liquidated  damages  currently  owed  under  the  settlement
documents.   (ECF  No.  10  ¶  1).   In  support  of  this  request,
Plaintiffs  submit  the  Declaration  of  John  P.  Eger.  (ECF  No.  10-
5,  Eger  Decl.,  ¶¶  4-5).   The  amount  specified  in  the  Eger
Declaration  corresponds  with  the  amount  requested  in  the  motion
for  default  judgment  and  is  consistent  with  the  amount  requested
in  the  complaint.   The  record  supports  Plaintiff's  request  for
$88,150.95  under  the  settlement  documents.

### 2.    Unpaid Contributions

Plaintiffs  seek  $103,611.41  in  unpaid  contributions  for  the
months  of  March  2010  through  November  2010.   (ECF  No.  10  ¶  2).
In  support  of  this  request,  Exhibit  A  sets  forth  the  amounts  of
unpaid  contributions  for  these  months.   (ECF  No.  10-4).   The
figures  in  Exhibit  A  correspond  with  the  amount  requested  in  the

motion for default judgment, but they differ from the figures requested in the complaint.  In the complaint, Plaintiffs sought only $81,469.83 in unpaid contributions for the months of March 2010 through November 2010.  (ECF No. 1 ¶¶ 12-15).

As noted, under Rule 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  As explained in *Sheet Metal Workers' National Pension Fund v. Frank Torrone & Sons, Inc.*, No. Civ.A. 1:04CV1109, 2005 WL 1432786 (E.D.Va. June 1, 2005):

> This Rule operates to protect a defendant who chooses to default:
>
> "The theory of this provision is that the defending party should be able to decide on the basis of the relief requested in the original pleading whether to expend the time, effort, and money necessary to defend the action.  It would be fundamentally unfair to have the complaint lead defendant to believe that only a certain type and dimension of relief was being sought and then, should defendant attempt to limit the scope and size of the potential judgment by not appearing or otherwise defaulting, allow the court to give a different type of relief or a larger damage award. . . . If defendant chooses not to proceed, liability cannot be increased.  This principle seems applicable whether or not defendant appears at the damage hearing and therefore should not turn on when the default occurs."

*Id.* at *7-8 (quoting 10 Charles Alan Wright et al., *Federal Practice and Procedure* § 2663 (3d ed. 2005)).  In considering the scope of Rule 54(c), the Fourth Circuit has held that in

default cases, there can be no recovery over the amount pled in the complaint, and that the complaint must pray for a specific monetary amount. *See Eddins v. Medlar*, Nos. 87-2602, 89-2910, 881 F.2d 1069, 1989 WL 87630, at *1, 3 (4th Cir. July 21, 1989) (unpublished table opinion) ("[Rule 54(c)] expressly protects a defaulting party from a judgment in excess of that demanded in the complaint."); *Compton v. Alton Steamship Co.*, 608 F.2d 96, 104 n.16 (4th Cir. 1979) ("[T]he relief available on default [should] be such as is within the fair scope of the allegations of the complaint and, when money judgment is sought, the specific amount demanded." (internal quotations omitted)).

Here, Plaintiffs themselves appear to be unsure how to apply the provision of the trust agreements that permits estimation of the amounts due when an employer fails to file contribution reports. As quoted in the complaint, the trust agreements allow "the greater of the average for the monthly payments *actually made* by the Employer for the last three (3) months for which payments were made, or the average of the monthly payments made by the Employer for the last twelve (12) months for which payments were made." (ECF No. 1 ¶ 14) (emphasis added). When determining this amount in the complaint, Plaintiffs averaged the hours submitted for April, May, and June 2010, which were the last three months for which *some* payment was made. In contrast, when determining this

amount in the motion for default judgment, Plaintiffs averaged the hours submitted for December 2009, and January and February 2010, which were the last three months for which *full* payment was made.   Both interpretations are reasonable in light of the language provided from the trust agreements.   This ambiguity in the damages terms of the contract should not be resolved on a motion for default judgment.   Accordingly, the court will refer to Plaintiffs' original request and limit the award for unpaid contributions to $81,469.83 as set forth in the complaint.

### 3.   Liquidated Damages

Plaintiffs seek $34,664.60 in liquidated damages assessed on late contributions for the months of September 2009 through November 2010.   (ECF No. 10 ¶ 2).   In support of this request, Exhibit A demonstrates liquidated damages assessed for these months.   (ECF No. 10-4).   These figures represent 20% of the late payments, including projected late payments.   The figures in Exhibit A correspond with the amount requested in the motion for default judgment, but they differ from the figures requested in the complaint.   In the complaint, Plaintiffs sought only $28,852.73 in liquidated damages assessed on late contributions for the months of September 2009 through October 2010.   (ECF No.

1 ¶¶ 16-19).[3]  Liquidated damages are calculated as a percentage of unpaid contributions, so the change in methodology that Plaintiffs employed in calculating unpaid contributions between the complaint and the motion for default judgment logically led to an increase in liquidated damages sought.  For the same reasons discussed earlier regarding the unpaid contributions, the court will base its award of liquidated damages on the figures provided in the complaint.  Accordingly, the court will refer to Plaintiffs' original request and limit the award for liquidated damages to $28,852.73.

####    4.    Interest

Plaintiffs seek $9,734.68 in interest at the rate of 12% per annum assessed on late paid contributions through the date of the payment and on unpaid contributions through May 15, 2011. (ECF No. 10 ¶ 3).  The interest is owed pursuant to 29 U.S.C. § 1132(g) and the trust agreements.  (*Id.*).  In support of this request, Exhibit A demonstrates total interest assessed for each month from September 2009 through November 2010.  (ECF No. 10-4).  The figures in Exhibit A correspond with the amount requested in the motion for default judgment, but the interest

---

[3] In the complaint, Plaintiffs calculated liquidated damages from September 2009 through October 2010 instead of November 2010 as they do in the motion for default judgment.  (ECF No. 1 ¶ 17; ECF No. 1-1, at 1).  Plaintiffs do not offer an explanation for this discrepancy.

calculations in Exhibit A appear to be based on the projections of unpaid contributions that were set forth in Exhibit A, and not on the projections that were set forth in the complaint. For the same reasons discussed earlier regarding the unpaid contributions, the court will base its award of interest on the figures provided in the complaint.  Accordingly, by its own calculation, the court will limit the award for interest to $8,271.63.

**5.   Attorneys' Fees**

Plaintiffs seek $706.25 in attorneys' fees.  In support of this request, Plaintiffs submit a Declaration of Attorney's Fees and Exhibit C, a spreadsheet of the hours billed by Plaintiffs' counsel.  (ECF Nos. 10-2, 10-6).  Exhibit C indicates that the firm spent 5.75 hours on this case on behalf of the Plaintiffs at a rate of $100 per hour for paralegal time and $275 per hour for attorney time.  (ECF No. 10-6).  The paralegals spent 5.0 hours on this case and the attorneys spent 0.75 hours on this case.  (*Id.*).  The sum of $706.25 is accurate based on the rates and times listed in Exhibit C and is sufficiently supported by the record.

**6.   Costs**

Plaintiffs seek $525.00 in costs.  In support of this request, Plaintiffs submit Exhibit C, a spreadsheet of the costs incurred by Plaintiffs' counsel.  (ECF No. 10-6).  Exhibit C

indicates that the costs included $350.00 for the complaint filing fee and $175.00 for the Private Process Server Fee. (*Id.*).   The sum of $525.00 is accurate based on the figures listed in Exhibit C and is sufficiently supported by the record.

## III. Summary Judgment as to the Bricenos

### A.   Standard of Review

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.   *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).   Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

### B.   Analysis

Plaintiffs move for summary judgment against Kevin Briceno and June Briceno with regard to the personal guarantees that they each provided as to the settlement documents.   Plaintiff alleges that the settlement documents have been breached.   As a result, Plaintiffs seek a total award of $226,426.97 — the putative amount owed by Security Fire.   In support of their argument, Plaintiffs submit the settlement documents (ECF No.

11-14); a spreadsheet ("Exhibit J") specifying unpaid contributions, liquidated damages, and interest pertaining to each of the relevant months (ECF No. 11-15); and a spreadsheet ("Exhibit K") specifying attorneys' fees and costs (ECF No. 11-16).[4]

Plaintiffs' motion stands unopposed. The court must nevertheless review the motion and "determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Robinson v. Wix Filtration Corp.*, 599 F.3d 403, 409 n.8 (4th Cir. 2010). According to the Fourth Circuit, "[a]lthough the failure of a party to respond to a summary judgment motion may leave uncontroverted those facts established by the motion, the district court must still proceed with the facts it has before it and determine whether the moving party is entitled to judgment as a matter of law based on those uncontroverted facts." *Id.* (internal quotations omitted). Therefore, Plaintiffs' factual assertions will be taken as true, and Plaintiffs' claim against the Bricenos will be fully analyzed in light of those facts.

---

[4] Exhibit J is identical to Exhibit A from the motion for default judgment. Exhibit K is identical to Exhibit C from the motion for default judgment.

A guaranty is a contract. *Gen. Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 262 (1985). For all contracts, Maryland follows "the objective law of contracts":

> A court construing an agreement under this test must first determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated. In addition, when the language of the contract is plain and unambiguous there is no room for construction, and a court must presume that the parties meant what they expressed. In these circumstances, the true test of what is meant is not what the parties to the contract intended it to mean, but what a reasonable person in the position of the parties would have thought it meant. Consequently, the clear and unambiguous language of an agreement will not give away to what the parties thought that the agreement meant or intended it to mean. As a result, when the contractual language is clear and unambiguous, and in the absence of fraud, duress, or mistake, parol evidence is not admissible to show the intention of the parties or to vary, alter, or contradict the terms of that contract.

*Id.* (internal citations omitted). In this case, paragraphs twelve and fourteen of the Settlement Agreement delineate the scope of the Bricenos' individual responsibilities as guarantors:

> 12. June Briceno agrees to personally guarantee all terms of this Agreement, including but not limited to, the payment of the principal amount owed and payment of all future amounts which may become due during the duration of this Agreement.

17

> . . . .
> 14. Kevin Briceno agrees to personally guarantee all terms of this Agreement, including but not limited to, the payment of the principal amount owed and payment of all future amounts which may become due during the duration of this Agreement.

(ECF No. 11-14 ¶¶ 12, 14).[5] Following the "clear and unambiguous" language of the contract, the Bricenos guaranteed "all terms" of the Settlement Agreement.[6] These terms encompass the settlement monies sought by Plaintiffs. (Id. ¶ 3). These terms also contemplated that Security Fire would "submit all future monthly remittance reports and pay monthly contributions to the NASI Funds as they become due in accordance with the [trust agreements]." (Id.) Security Fire failed to comply with these obligations. Accordingly, because Kevin Briceno and June Briceno personally guaranteed the *performance* of Security Fire under the trust agreements — as opposed to merely any judgments against or debts of the company — judgment will be entered against them for $226,426.97,[7] the full award demanded by Plaintiffs in their motion for summary judgment.

---

[5] Similarly, the Promissory Note provides: "June Briceno agrees to personally guarantee payment of this Note. Kevin Briceno agrees to personally guarantee payment of this Note." (Id. at 9).

[6] The signatures of Kevin Briceno and June Briceno in their individual capacities appear at the end of the settlement documents. (Id. at 6, 10).

18

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion for default judgment will be granted in part and denied in part. Their motion for summary judgment will be granted. A separate order will follow.

_____/s/_____

DEBORAH K. CHASANOW
United States District Judge

---

[7] As discussed above, these damages comprise the settlement monies of $88,150.95; unpaid contributions of $103,611.41; liquidated damages of $34,664.60; interest of $9,734.68; attorneys' fees of $706.25; and costs of $525.00.